694 So.2d 151 (1997)
Michael K. MILES, Appellant,
v.
STATE of Florida, Appellee.
No. 96-0323.
District Court of Appeal of Florida, Fourth District.
June 4, 1997.
*152 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, Judge.
Appellant, Michael Miles, raises numerous challenges to his conviction for burglary of a dwelling. We find merit in his challenge to the statistical DNA evidence admitted at trial since the trial court did not make the necessary findings that the statistical methodology was generally accepted, or that the DNA expert was qualified to present the statistical results.
At trial, the State presented Mr. Earl Ritzline as an expert in forensic serology. Mr. Ritzline's testimony concerned DNA testing that he conducted on saliva taken from a cigarette butt found in the burglarized trailer. Mr. Ritzline testified that the extracted DNA matched appellant's, and that the probability of such a match was one in 796. Among appellant's trial-level challenges to the DNA evidence was a claim that Mr. Ritzline was not adequately qualified to render an opinion on the DNA evidence. Appellant also objected to the general acceptance of the employed DNA testing methodology, and challenged the validity of Mr. Ritzline's statistical conclusion.
In a series of recent cases which were issued after the date of this trial, but during its pendency on appeal, the Florida Supreme Court revisited procedures for admitting DNA evidence at trial and pronounced several changes in the law which impact this case. In Brim v. State, 22 Fla. L. Weekly S45, S45, ___ So.2d ___,___ (Fla. Jan. 16, 1997), the court wrote to "clarify and emphasize that the DNA testing process consists of two distinct steps." Id. at S45, at ___. The first step, the "DNA testing process," is founded upon principles of molecular biology and chemistry. Id. The second step, which is implicated in the instant case, is the statistical step. It relies upon principles of statistics and population genetics; it is what gives "significance to a match." Id. The court, in Brim, held that the statistical analysis in a DNA comparison is independently subject to a Frye inquiry as a prerequisite to admissibility. See Frye v. United States, 293 F. 1013 (D.C.Cir.1923)(holding that the scientific basis for an expert opinion must, as a prerequisite to admissibility, be shown to be generally accepted in the relevant scientific community).
In this case, the trial court did not determine that the statistical methodology employed by Mr. Ritzline was generally accepted. Nor does the record clearly reveal just what statistical technique was applied. While Mr. Ritzline briefly described how the statistical data was procured,[1] this limited explanation, absent some speculation, does not identify the statistical methodology, nor does it address its general acceptance. Because the supreme court had not yet clarified that DNA testing involves two distinct steps, rather than just one, we find that appellant's objection to the general acceptance of the DNA test conducted in this case and his subsequent challenges at trial to the validity of the statistical conclusions were sufficient to preserve this issue for our review.
We are also unable to discern from the record whether Mr. Ritzline was properly qualified to report population frequency statistics. In Murray v. State, 692 So.2d 157, 162-64 (Fla.1997), the supreme court provided some guidance concerning the necessary *153 credentials of the expert reporting the DNA statistical and population genetics analysis, noting that it is not required that the DNA expert personally participate in the compilation of the statistical database referenced in a particular case, but that he "must, at the very least, demonstrate a sufficient knowledge of the database grounded in the study of authoritative sources."
Because the record does not reveal the statistical methodology employed in this case, or Mr. Ritzline's qualifications to present the statistical evidence, we remand for a limited evidentiary hearing similar to the one ordered in Brim. On remand, the trial court is to (1) assess Mr. Ritzline's competence to present the statistical evidence; and (2) clarify the exact methods used in calculating the DNA statistics and then conduct a Frye hearing to determine the general acceptance of the employed statistical techniques. If Mr. Ritzline is adequately qualified, and if the statistical methodology originally employed passes the Frye test, appellant's conviction is to stand. Otherwise, appellant must be afforded a new trial.[2]
GROSS, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
I have a feeling that the trial judge will be understandably perplexed by this court's reversaland especially for the reasons given by the majority. For the defense made no objection to the DNA statistical evidence at trial, and certainly did not argue the grounds used by the majority for its finding that the trial court erred in admitting the testimony. As I understand the objection at trial, it was that the DNA testing in this case was "novel" and that the state's expert was not qualified to perform this novel test. Thus, from my reading, the argument made to us was not preserved.
But even if it had been preserved, there is still the question of harmless error. The victim of this burglary arrived home at noon time to find defendant, a stranger, lurking around a vehicle parked at her house. When asked to explain himself, he said he had something to sell her, showing her 3 rings. They conversed for about 5 minutes, and then he left. She described him as a black male, 20-30 years of age, medium build, wearing matching purple shirt and shorts, white tennis shoes and a white hat, with a photo identification card clipped to his shirt, and riding a red bicycle. When she went into her house, she discovered that many of her personal belongings were missing but then found all of them, save one, in a box left just outside where the man had been lurking. Missing, however, was her gold watch with leather strap.
She immediately reported the burglary to police, who issued a BOLO. Two officers spied a man nearly 3 hours later less than a mile from the burglarized residence. They described him as a black male, 20-30 years of age, medium build, wearing matching purple shirt and shorts, white tennis shoes and a white hat, with a photo identification card clipped to his shirt, and riding a red bicycle. One of the officers asked him to explain a piece of tubing with a rubber end emerging from one of his knee-high socks, and he blurted out "Its paraphernalia." He was arrested and searched, and among the items found was the victim's gold watch with leather strap. The victim positively identified him as the man she had confronted outside her house.
The DNA evidence related to a cigarette butt found in the victim's bedroom. I agree with the Attorney General's argument that "if anyone erred in this case it was probably the prosecutor for allowing DNA to be discussed in this open-and-shut case." We have affirmed convictions on the harmless error test with evidence less conclusive than that adduced in this case. I think the admission *154 of the DNA testimony was harmless in light of all the other evidence.
The majority addresses this issue only in a footnote stating simply that the DNA error was "not harmless beyond a reasonable doubt." They do not explain why not. I suppose they have implicitly accepted the notion that any erroneous admission of DNA evidence is per se reversible error. It is true that in Hayes v. State, 660 So.2d 257 (Fla. 1995), the supreme quoted the following observation:
"Forensic DNA analysis should be governed by the highest standards of scientific rigor in analysis and interpretation. Such high standards are appropriate for two reasons: the probative power of DNA typing can be so great that it can outweigh all other evidence in a trial; and the procedures for DNA typing are complex, and judges and juries cannot properly weigh and evaluate conclusions based on different standards of rigor."
660 So.2d at 262. I do not read the mere quoting of this scientific observation, however, as an abandonment of the statutorily required harmless error test.
Section 924.33, Florida Statutes (1995), provides:
"No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant." [e.s.]
I would not infer a direction by the supreme court to presume error in the admission of DNA evidence from the kind of observation quoted by the court in Hayes. Until and unless the court explicitly requires a per se rule on DNA evidence, I believe we are required to apply the harmless error test of section 924.33.
NOTES
[1] Mr. Ritzline explained, "So, what we do is we have, we would go out and test 100 or 200 individuals and find out how often a specific type occurs like the one type of DQ Alpha 1.2,2. We would just go out and test and see how often it occurs. Each one would do that. We can multiply that together because they are inherited separately, they're not linked, and when you multiply that number together you find out what the frequency is."
[2] We find that the errors in this case were not harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). In this so-called "open and shut" case, appellant was acquitted of charges of theft of the items which were taken from the home but convicted of burglary. Because the DNA evidence was the only evidence directly placing appellant inside the burglarized residence, we cannot say that the admission of this evidence was not the deciding factor in appellant's conviction on the burglary charge.