738 So.2d 387 (1999)
Selondieu TIMOT, Appellant,
v.
STATE of Florida, Appellee.
No. 97-2769.
District Court of Appeal of Florida, Fourth District.
June 23, 1999.
Richard L. Jorandby, Public Defender, and Lisa Chang Malone, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
OWEN, WILLIAM C., Jr., Senior Judge.
Appellant was charged with and convicted of lewd assault by committing an act defined as sexual battery upon a child under the age of 16 years, an offense proscribed by Section 800.04(3), Florida Statutes (1995). Appellant's two principal issues concern (1) the admissibility of DNA evidence, and (2) the court's refusal to instruct the jury on assault. Because reversible error has not been demonstrated, we affirm.
Prior to trial appellant's counsel brought to the court's attention the then recent opinion in Brim v. State, 695 So.2d 268 (Fla.1997), but did not then or at any later *388 time make a specific request for a Frye[1] hearing. During the trial the state's DNA expert witness testified in substantial detail as to the methodology used in the Polymerase Chain Reaction (PCR) DNA testing and matching of the ten genetic markers which were found. At this point, appellant's counsel made the following objection:
Counsel: Judge, this is my only objection. It may be preliminary ... I don't have an objection to the expert at this point, because I do believe she's an expert.
But I do have an objection to at this point saying that she believes it was a match without laying the proper foundation under the Supreme Court case I gave you yesterday, that could match up mathematically or explain quantitatively how the relevance of what she may or may not refer to as a match.
I mean, that second portion has to be addressed. And ... I'm not prepared at this point to say she is an expert in that field.
So I would object to her at this point going beyond just saying how she separated X, Y and Z.
The Court: Well, I think your objection at this point is premature.... If your objection is as to a specific question that might be asked of the witness, then I'll just have to wait until I hear the question.
Counsel: My main concern is that she's going to use the chart at this point to claim that there's some type of match. I don't believe that the State's laid a foundation for that.
The Court: Well, I'll wait and see.
Though the objection was not stated as precisely as it might have been, it is clear that it was intended to call to the court's attention the requirement, emphasized in Brim, that the second step of the DNA testing process (the population frequency statistics) is subject to a Frye inquiry as a prerequisite to admissibility. See Miles v. State, 694 So.2d 151 (Fla. 4th DCA 1997). Although the court essentially overruled the objection, it did so simply because the objection was premature. The same objection was made and overruled several times thereafter during the continuation of that part of the witness's testimony concerning the first step of the testing process (the scientific methodology).
When the witness began testifying as to the second step (the population frequency), appellant's counsel requested the opportunity to voir dire the witness before she testified on this step of the testing. That request was denied, and the witness then completed her testimony on the second step without further objection. The witness described in detail the data bases used for the different racial groupings in compliance with the standards and techniques of the National Research Council, and opined that all were based on generally accepted principles of population genetics and statistics. She then testified that the data bases had been explained to and approved by a nationally recognized qualified statistician in Texas who had furnished her with the population frequency statistics. Finally, she quantified the probability of another unrelated Haitian male (as appellant is) having the same genetic markers as appellant, but failed to describe the precise calculation methodology that the statistician had used.
Upon completion of the witness's testimony, the court announced that in adhering to the requirements of the Brim case it found the method used by the expert witness in giving the statistical testimony was generally accepted in the scientific community and was valid evidence to go before the jury. In response to the court's inquiry to counsel as to whether either felt there was any other matter that the court should address in order to comply with the Brim decision, both responded in the negative. The following morning, however, *389 the prosecutor inquired of the court whether the court's findings, as announced the day before, applied to both the molecular biology and chemistry principles and the calculation of population frequency statistics, that is, that they were both based on generally accepted principles. The court answered in the affirmative.
Appellant contends that the second step of the DNA testing process, the matter of DNA population frequency statistics, did not satisfy the requirements of Frye v. United States, 293 F. 1013 (D.C.Cir.1923), as required in Florida. See Murray v. State, 692 So.2d 157, 162 (Fla.1997). Specifically, appellant contends the State failed to establish the statistical method employed. There was no objection at trial to the absence of proof as to the particular statistical method employed and thus, that issue is not preserved for appellate review.[2]
Appellant also contends it was error for the court to allow the DNA testimony to be heard by the jury prior to the court making a determination of its admissibility.[3] That was error, of course. The very purpose of a Frye hearing is to determine the admissibility of the evidence before the jury is permitted to hear it. But, it was not reversible error here. That issue was not preserved for appeal because appellant did not timely object to the expert testifying without a separate Frye hearing being held first, nor was there any request for a Frye hearing pre-trial. See Jordan v. State, 694 So.2d 708, 716 n. 8 (Fla.1997); Hadden v. State, 690 So.2d 573, 580 (Fla.1997). More importantly, the error in allowing the jury to hear the evidence before the court determines its admissibility is necessarily rendered harmless when the court determines, as was the case here, that the evidence is admissible. In such instances, the jury is permitted to hear the evidence in any event; thus, the harm which a defendant sustains from the admission of such evidence arises from the jury hearing it, not from when the jury hears it.
Appellant was charged with lewd assault by committing an act defined as sexual battery on a child under 16 years of age contrary to section 800.04(3), Florida Statutes (1995). At the charge conference, the court granted the state's motion to strike the portion of the standard jury instruction defining assault, on authority of Reynolds v. State, 622 So.2d 1139 (Fla. 5th DCA 1993). Appellant claims that in so doing the court recast the charge as a lewd act and thereby committed fundamental error in changing the offense after the trial had been completed, citing O'Bryan v. State 692 So.2d 290 (Fla. 1st DCA 1997).
Though the information charged that appellant did unlawfully commit a lewd assault by "committing an act defined as sexual battery under Florida Statute § 794.011(1)(h) upon a child under the age of 16 years," the information could just as well have charged that appellant did unlawfully commit a lewd act by "committing an act defined as sexual battery, etc." The substance of the offense charged was that appellant did unlawfully commit an act defined as sexual battery under Florida Statute § 794.011(1)(h) upon a child under the age of 16 years. Whether it is designated as a lewd act or a lewd assault, the substantive offense remains the same. In either case, the proof necessary to convict is identical, assault not being an element under section 800.04(3). Unlike *390 O'Bryan, where the trial court instructed on a different subsection of section 800.04 than that under which the defendant was charged, here the court charged the jury on subsection 800.04(3), with which appellant was charged. Appellant also relies on dicta in this court's opinion in Gaines v. State, 652 So.2d 458 (Fla. 4th DCA 1995) (that the failure of the court to give an instruction defining assault was not harmless error). Gaines is distinguishable. The offense with which Mr. Gaines was charged was lewd assault under section 800.04(1), which includes "assault" in the disjunctive as one of the means by which the offense can be committed. As stated above, the offense with which appellant was charged did not involve the element of assault. The only elements required to be proved were that (1) the victim was under the age of 16 years, and (2) appellant committed an act upon the victim in which the sexual organ of the appellant had union with the vagina of the victim.
Appellant's remaining point, which involves an evidentiary ruling, neither demonstrates error nor requires discussion.
AFFIRMED.
WARNER and FARMER, JJ., concur.
NOTES
[1] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[2] Appellant argues that our holding in Miles v. State, 694 So.2d 151 (Fla. 4th DCA 1997), requires reversal where the record does not show the statistical method employed. Unlike the present case, in Miles the court found that issue was preserved for appellate review by appropriate and timely objection.
[3] The state urges that the proper procedure would be for the defense to move pretrial for exclusion of DNA evidence as approved in Ramirez v. State, 651 So.2d 1164 n. 4 (Fla. 1995). That is the better procedure but, so far as we are advised, defendant's failure to request a pretrial hearing does not ipso facto preclude appellate review.