807 So.2d 136 (2002)
Dennis ARNOLD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-4689.
District Court of Appeal of Florida, Fourth District.
January 30, 2002.
Rehearing Denied February 20, 2002.
*138 Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Judy Hyman, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Dennis Arnold (Appellant) appeals his conviction and sentence, entered following a jury trial, on the burglary offense. Appellant raises three issues on appeal: (1) the trial court reversibly erred in denying a Frye[1] hearing, (2) the trial court reversibly erred when it allowed the State to elicit testimony from the eye-witness concerning his occupation as a pastor, and (3) the habitual felony offender statute, section 775.084, Florida Statutes (1999), is unconstitutional pursuant to the decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We agree that the trial court reversibly erred when it denied defense counsel's request for a Frye hearing and write to address that issue.

FACTS
Appellant was charged by information with burglary of a dwelling (Count I), grand theft auto (Count II) and fleeing or attempting to elude (Count III). Prior to trial, defense counsel filed a motion for a Frye hearing and to suppress the DNA evidence. The State filed a motion to strike the request for a Frye hearing.
At a hearing on the motions, defense counsel moved to exclude the DNA evidence on three grounds: (1) the Polymerase Chain Reaction (PCR) DNA testing method employed by the State was not generally accepted in the scientific community and therefore did not meet the Frye test for admissibility at trial, (2) the population data employed in the probability calculations used by the State's expert to report the frequency of a match between Appellant's DNA and the evidence sample recovered from the crime scene failed to meet the Frye test for admissibility and (3) the State's expert witness, Tara Hockenberry, did not qualify as an expert with regards to the probability calculations used in the case.
The State argued the PCR method and probability calculations are scientifically reliable and accepted in the relative scientific community. The State contended that because the DNA method of analysis used by the Palm Beach County Sheriffs Office Crime Laboratory (PBSO Crime Lab) has been found to meet the Frye test criteria in various cases, it is no longer considered new or novel. Thus, the State asserted that a Frye hearing was not necessary.
*139 The trial court granted the State's motion to strike defense counsel's grounds one and two for a Frye hearing and denied it as to ground three. The trial court did not explain the basis of its decision. Following a hearing, the trial court determined Tara Hockenberry had sufficient expertise, based upon her education, experience and training to render an expert opinion in the area of statistical methodology used to calculate the frequency of the DNA match. The trial court denied the motion to exclude her testimony.
At trial, Haywood Williams gave an eye-witness account of the burglary. At around 1:00 or 1:30 A.M., he was in his living room which had a window facing the street. He saw a car light come up the street and saw a car back up into the driveway of the house across the street. He thought this was unusual because his neighbor was not living there while his house was being refurbished. He went to his front door and pulled back the curtain to look through the glass door. He could see a "darkish car" in the driveway, but could not tell the make or model of the car. Williams saw a black man exit the car from the driver's side. Williams continued to look out his door while he called the police. He then saw the man inside the house opening the refrigerator door. As the door opened, the light in the refrigerator turned on, illuminating the man. Williams testified that he could see "a pretty good picture of the outline of the person, the build. It was pretty clear that it was a black male, short hair, thin." He saw the man pull a red cooler out of the refrigerator. At that point, a police car arrived.
Officer Payne testified that as he approached the house, he saw a man exit and enter the vehicle in the driveway. The man pulled out to the end of the driveway, about eight feet away from him. Officer Payne pointed his flashlight into the driver's face and the man looked directly at him. Officer Payne could tell he was a black male with "low hair," 5'10 to 6 feet tall, 160 to 180 pounds, wearing a dark-colored shirt with possibly a light-colored shirt underneath. Officer Payne returned to his patrol car to pursue the vehicle, but lost sight of where it went.
While searching the area for the vehicle, Officer Payne responded to a crash scene where he identified a vehicle as the one he saw in the driveway. He then saw a suspect in the back of a patrol car. That suspect was Appellant. Officer Payne could not identify him as being the same man that he saw in the driveway.
Williams was taken to the crash scene. He saw a car which he identified as the car he saw in the driveway. He also saw Appellant sitting in the back of the patrol car and identified him as the man whom he saw break into the house. Williams also identified Appellant in court as the man whom he saw in the house and later identified in the police car. Appellant was the only black man in the courtroom.
During cross-examination, Williams admitted that when the man opened the refrigerator, he could only see an outline of his face for five to ten seconds. He could not tell how far apart his eyes were, whether he had facial hair, what his mouth looked like, what his nose looked like, what his ears looked like or what his chin looked like.
Over objection, Dr. Martin Tracey, a population geneticist, testified to what DNA analysis is, what the PCR method is, and explained how matches are made. Over objection, Tara Hockenberry testified that she compared blood found at the crime scene to a sample of Appellant's blood and found a match. She found that the probability of selecting an unrelated male having the same DNA profile for the *140 Caucasian population as one in 210,000,000, for the African American population as one in 33,000,000 and for the Hispanic population as one in 430,000,000.
The jury found Appellant guilty of burglary of a dwelling (count I) and not guilty of grand theft auto (count II) and fleeing or attempting to elude (count III). Defense counsel filed a motion for a new trial, arguing that the DNA evidence was improperly admitted. The trial court denied the motion and Appellant was convicted on the burglary offense and sentenced as a violent career criminal to 30 years in prison.

ANALYSIS
"Florida utilizes the Frye test to determine the admissibility of new or novel scientific evidence such as DNA." Hayes v. State, 660 So.2d 257, 262 (Fla.1995). "The principle inquiry under the Frye test is whether the scientific theory or discovery from which an expert derives an opinion is reliable." Ramirez v. State, 651 So.2d 1164, 1167 (Fla.1995).
The DNA testing process consists of two distinct steps. The first step relies on principles of molecular biology and chemistry to indicate that two DNA samples match or look the same. Brim v. State, 695 So.2d 268, 269 (Fla.1997). In Hayes, the Florida Supreme Court took judicial notice that the first step of the DNA testing process satisfies the Frye test, provided the laboratory has followed accepted testing procedures that meet the Frye standard to protect against false readings and contaminations. Id.; see also Murray v. State, 692 So.2d 157, 161 (Fla.1997). The second step relies on principles of statistics and population genetics to give statistical significance to the DNA match, by indicating the statistical frequency with which such matches might occur in the population. Brim, 695 So.2d at 269-70. The calculation techniques used in determining and reporting DNA population frequencies must also satisfy the Frye test. Id. at 270-71.
The supreme court has set forth a step-by-step analysis that a trial court must make before admitting into evidence the testimony of an expert witness concerning a new scientific principle. Ramirez, 651 So.2d at 1166. A trial court must determine whether: (1) expert testimony will assist the jury in understanding the evidence or in determining a fact in issue; (2) the expert's testimony is based on a scientific principle or discovery that is "sufficiently established to have gained general acceptance in the particular field in which it belongs" under the Frye test; and (3) the particular expert witness is qualified to render an opinion on the subject in issue. Id. If the trial court's answer to the first three questions is in the affirmative, then the expert may testify at trial and the jury can assess the expert's credibility and either accept or reject his or her opinion. Id.
The trial court must make these determinations following a fair hearing where both parties are allowed to present conflicting evidence. Id. at 1168. "This is especially important in a criminal trial where the defendant is guaranteed certain constitutional rights not the least of which is the due process right to present witnesses in one's behalf." Id. The burden is on the proponent of the evidence, in this case the State, to establish by a preponderance of the evidence the general acceptance of both the underlying scientific principle and the testing procedure used to apply that principle to the facts of the case. Id.
In this case, prior to trial, Appellant requested a Frye hearing to determine whether (1) the PCR testing method met *141 the Frye test for admissibility at trial (step one in the DNA testing process), (2) the population data used in the probability calculations met the Frye test for admissibility (step two in the DNA testing process) and (3) the State's expert witness, Tara Hockenberry, was qualified to testify as an expert with regards to the probability calculations used in the case. The trial court denied the request for a Frye hearing on issues one and two without explanation. The trial court held a hearing solely on the issue of whether Hockenberry was qualified to testify as an expert. Following that hearing, the trial court found that Hockenberry was qualified to testify.
Appellate review of a Frye determination is de novo. Brim v. State, 695 So.2d 268 (Fla.1997). When undertaking such a review, we consider the issue of general acceptance at the time of appeal rather than at the time of trial. Hadden v. State, 690 So.2d 573, 579 (Fla.1997).
Appellant correctly argues that an inquiry into the reliability of the DNA testing for purposes of admissibility was necessary because Appellant made a timely request for a Frye hearing, supported by authorities indicating that there may not be general acceptance in the scientific community of the DNA testing technique employed. See Ramirez, 651 So.2d at 1168.
The State concedes that the trial court did not initially hold a proper Frye hearing. The State argues the trial court heard evidence concerning DNA testing and its scientific underpinnings at the hearing on the admissibility of Hockenberry's testimony as an expert. The State asserts that the trial judge made an informed determination that the PCR test sought to be admitted into evidence met the standards set forth under the Frye test when it decided that Hockenberry was qualified to testify as an expert. However, as Appellant asserts, the trial court did not make that finding pursuant to evidence presented at a Frye hearing.
At the hearing which the trial court did hold, the trial judge found, "The empirical formulas and the database utilized by Palm Beach County have been generally accepted by the scientific community and have passed scientific muster." However, Appellant was not given an opportunity to challenge the DNA testing methods employed in the instant case, because the only issue litigated at the hearing was whether Hockenberry was qualified to testify as an expert in the field of DNA testing. The failure to give Appellant an opportunity to present conflicting evidence constituted a violation of his due process rights. See Ramirez, 651 So.2d at 1168. Accordingly, the trial court erred when it admitted the DNA evidence at trial without having held a Frye hearing to determine whether (1) the PCR testing method met the Frye test for admissibility at trial (step one in the DNA testing process) and (2) the population data used in the probability calculations met the Frye test for admissibility (step two in the DNA testing process).
Having found that the trial court erred, it is necessary to determine whether the error was harmless beyond a reasonable doubt. See Hadden, 690 So.2d at 581. The remaining evidence against Appellant consisted of Williams' identification of Appellant. This identification was questionable. Williams saw the man through his glass door, across the street, through the window of the house and the only light was that coming from the refrigerator. Williams admitted that he only saw an outline of the man opening the refrigerator and could not describe any facial features. Additionally, when Williams identified Appellant at the crash scene it was highly suggestive as he was the only suspect and he was sitting in the back of a police car. *142 Williams' identification of Appellant in court was also highly suggestive as Williams was the only black man. Williams' identification of Appellant is also questionable because Officer Payne who saw the man in the driveway at a distance of only eight feet while shining a flashlight on him, was not able to identify Appellant as being that same man.
In light of Williams' questionable identification, the trial court's error in admitting the DNA evidence, without making the proper Frye inquiry, was not harmless beyond a reasonable doubt, as required by State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), and therefore, is reversible error. Accordingly, Appellant's conviction and sentence are reversed. The case is remanded for a Frye hearing in accordance with this opinion. See Brim, 695 So.2d at 275. If, at the conclusion of the hearing, the trial court determines that there was sufficient basis to admit the DNA evidence presented, the trial court should reinstate the conviction and sentence. If the trial court determines the DNA evidence was inadmissible under Frye, the trial court should order a new trial if the State so elects. The remand is limited solely to this issue and we direct the hearing be held on this matter within sixty days from the date this opinion becomes final. On the two remaining issues on appeal, we find no error and affirm.
Reversed and remanded.
STONE and FARMER, JJ., concur.
NOTES
[1] Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923).