841 So.2d 558 (2003)
Lee M. ROBERTS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-4465.
District Court of Appeal of Florida, Fourth District.
March 12, 2003.
Rehearing Denied April 17, 2003.
Carey Haughwout, Public Defender, Jeffrey Anderson and Samuel A. Walker, Assistant Public Defenders, and West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant was convicted of robbery and false imprisonment after a jury trial. He appeals, arguing that the trial court erred *559 in denying his request for a Frye hearing to determine whether the calculation technique used to determine the statistical frequency of the DNA match in his case was reliable. We agree, on the authority of Arnold v. State, 807 So.2d 136 (Fla. 4th DCA 2002), and reverse.
On December 29, 1999, Kathy Tresize was working alone at Tag Insurance in West Palm Beach. At around 3:00 p.m., two men entered the store and inquired about insurance. One of the men was wearing a fisherman's hat. After Tresize gave them a quote on insurance premiums, the two men said they would consider it and come back. At around 5:00 p.m., the men returned to the store and told Tresize that they had decided to buy the insurance. As Tresize was preparing the policy, the man wearing the fisherman's hat jumped over her desk and demanded money. Tresize showed him the cash drawer. As he searched for money, the other man tied Tresize up. The man wearing the fisherman's hat pointed a gun at her head and demanded more money. She told him it was in the filing cabinet. He opened the drawer, removed a manilla folder, and took the money. The two men then left the agency and walked across the street past a Miami Subs restaurant and a dumpster.
After the men left, Tresize hopped to a phone and called the police. Officer Mcdevitt responded with a K-9 unit. The dog picked up a scent that he followed from the front of the insurance agency, across the street, and to the back of the dumpster. The dog alerted to a fisherman's hat lying on the ground behind the dumpster. Officer Wexler obtained a fingerprint from the manilla folder that had contained the stolen money; it matched one of appellant's fingerprints.
On the first day of trial, before jury selection, appellant moved to exclude DNA evidence and expert opinions. Specifically, appellant objected to testimony from the state's witness, Tara Hockenberry, that appellant's DNA profile matched the profile of one of the DNA samples taken from the fisherman's hat. Appellant challenged Hockenberry's qualifications to give an expert opinion evaluating the population statistical data used for the DNA match. When the trial court asked defense counsel whether he wanted a Frye hearing, he responded that he did. The court, however, determined that a Frye hearing was not necessary to determine the admissibility of the statistical formula used for the DNA match; it thus limited the hearing to determining whether Hockenberry was qualified to testify as an expert in the area of population genetics and statistics.[1]
Appellant argues that, based on Arnold, he was entitled to a Frye hearing to determine whether the calculation technique used to determine the statistical frequency of the DNA match was reliable. In Arnold, we reversed the defendant's burglary conviction because the trial court denied the defendant a Frye hearing on the admissibility of DNA evidence. See id. at 141-42. The defendant there moved for a Frye hearing to determine whether (1) the Polymerase Chain Reaction (PCR) DNA testing method employed by the state met the Frye test for admissibility at trial, (2) the population data employed in the probability calculations used by the state's expert to report the frequency of a match between the defendant's DNA and the evidence sample recovered from the crime scene met the Frye test, and (3) whether the state's expert witness, Tara *560 Hockenberry, qualified as an expert regarding the probability calculations. The state argued that a Frye hearing was not necessary because the PCR method and probability calculations were scientifically reliable and accepted in the relevant scientific community. Without stating its reasons, the court denied the motion for a Frye hearing. It did, however, hold a hearing on Hockenberry's qualifications and determined that she could render an expert opinion in the area of statistical methodology for calculating the frequency of the DNA match. See id. at 138-39.
As we discussed in Arnold, the second step of the DNA testing process "relies on principles of statistics and population genetics to give statistical significance to the DNA match, by indicating the statistical frequency with which such matches might occur in the population." Id. at 140 (citing Brim v. State, 695 So.2d 268, 269-70 (Fla.1997)). Accordingly, "the calculation techniques used in determining and reporting DNA population frequencies must also satisfy the Frye test." Id. As in Arnold, the trial court here determined that a Frye hearing was not necessary on an issue concerning the probability calculations used for the DNA match and held a hearing only to determine whether Hockenberry was qualified to testify as an expert. In denying appellant's request for a Frye hearing, the court denied appellant the opportunity to call his own statistician or population geneticist to challenge the state's evidence regarding general acceptance in the scientific community of the calculation techniques employed. This constituted a violation of appellant's due process rights. See id. at 141 (citing Ramirez v. State, 651 So.2d 1164, 1168 (Fla. 1995)).
Appellant contends that the error in admitting the statistical evidence, without a Frye hearing, cannot be considered harmless beyond a reasonable doubt. Although the victim saw the robbers, she could not identify appellant as one of them. The only other evidence identifying appellant as one of the robbers was testimony that his fingerprint was on the manilla envelope that had contained the stolen money. As appellant points out, however, there were several other unidentified fingerprints on the envelope and the possibility that appellant's fingerprint was placed there by a legitimate means was not excluded. Furthermore, during closing argument, the prosecution argued that the DNA statistics were more compelling evidence of appellant's guilt than the fingerprint evidence. Thus, we cannot say beyond a reasonable doubt that the DNA evidence did not contribute to appellant's convictions.
Accordingly, as we did in Arnold, we reverse appellant's conviction and sentence and remand this case to the trial court for a Frye hearing to determine if the calculation techniques used to determine the statistical frequency of the DNA profiles satisfy the Frye test. See id. at 142. If, following a hearing, the court determines that there was a sufficient basis for admitting the DNA evidence presented at trial, the court should reinstate the conviction and sentence. However, if the trial court determines that the DNA evidence failed to meet the Frye test, then it should grant a new trial. Our remand is limited solely to this issue and we direct that the hearing be held within sixty days from the date this opinion becomes final.
REVERSED and REMANDED.
KLEIN and GROSS, JJ., concur.
NOTES
[1] Appellant submits that the state failed to call a statistician or population geneticist who could testify that the calculation technique used was generally accepted in the scientific community.