DAMOORGIAN, J.,
concurring specially.
We commend Judge Gross for his thorough review of the history of the harmless error test and for his logical formulation of the “more likely than not” harmless error test for civil cases. Given the supreme court precedent upon which Judge Gross bases the majority opinion, we are compelled to concur that this court, going forward, should apply the “more likely than not” harmless error test in civil cases.
However, if we were writing on a clean slate, we would argue that the only harmless error test we should apply in civil cases is the plain language of Florida’s harmless error statute.
As the majority opinion points out, before 1911, the common law established two different harmless error rules: (1) the “orthodox” rule by which an error was not a sufficient ground for a new trial unless it appeared, looking at all the evidence, that the truth had not been reached as a result; and (2) the more stringent “Exchequer” rule by which an error at trial created per se a right to reversal. The shift in the early twentieth century from the orthodox rule to the Exchequer rule was widely criticized for making reversal too easy. Therefore, at the suggestion of the American Bar Association, the Florida Legislature, in 1911, enacted Florida’s harmless error statute:
*773 No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.
§ 59.041, Fla. Stat. (2010) (formerly § 54.28, Fla. Stat.).
The harmless error statute, which has remained unchanged in one hundred years, is unambiguous. The legislature has entrusted the courts to set aside or reverse a judgment, or grant a new trial, only when the error complained of has resulted in a miscarriage of justice. Whether a miscarriage of justice has occurred is to be determined on a case-by-case basis after an examination of the entire case. If the determination is a close question, then a liberal construction favors setting aside or reversing the judgment or granting the new trial. In short, the legislature has entrusted the courts to recognize a “miscarriage of justice” as that phrase is commonly used, and “[t]he authority of the legislature to enact harmless error statutes is unquestioned.” State v. DiGuilio, 491 So.2d 1129, 1134 (Fla.1986).
As the majority opinion points out, however, over the last hundred years, courts have sought to further interpret the phrase “miscarriage of justice.” The majority opinion seeks to justify that exercise by citing to the harmless error statute’s last sentence, “This section shall be liberally construed.” However, we do not read the statute’s last sentence as the legislature’s express invitation for the courts to further interpret “miscarriage of justice.”
Rather, the statute’s last sentence merely provides that if the determination of whether a miscarriage of justice has occurred is a close question, then a liberal construction favors setting aside or reversing the judgment or granting the new trial.
Nevertheless, over the last hundred years, courts apparently have treated the phrase “miscarriage of justice” as being ambiguous and therefore have attempted to formulate more specific tests to determine whether a miscarriage of justice has occurred. As the majority opinion points out, courts have formulated two tests: (1) a “but-for,” “correct result” test which focuses on the outcome; and (2) the more forgiving “effect on the fact finder” test which focuses on the process.
In our view, these two tests merely have returned us to where we were a century ago when courts debated over whether to apply the “orthodox” rule or the “Exchequer” rule to determine whether error was harmful or not. But today, the harmless error statute already is in effect. The statute is unambiguous. The statute should be applied according to its plain language in civil cases rather than continuing our century-old struggle to further define the phrase “miscarriage of justice.” As our supreme court stated in Daniels v. Florida Department of Health, 898 So.2d 61 (Fla.2005):
When the statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent. In such instance, the statute’s plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent. When the statutory language is clear, courts have no occasion to resort to rules of construction — they must read the statute as written, for to do other *774 wise would constitute an abrogation of legislative power.
Id. at 64-65 (internal citations and quotations omitted); see also DiGuilio, 491 So.2d at 1137 (“[O]ur responsibility as an appellate court is to apply the law as the Legislature has so clearly announced it. We are not endowed with the privilege of doing otherwise regardless of the view which we might have as individuals.”) (citations omitted).
In defense of our argument to apply the harmless error statute’s plain language in civil cases, we foresee two concerns. First, some may be concerned that one judge’s subjective view of a “miscarriage of justice” may be different than another judge’s subjective view of a “miscarriage of justice.” We harbor no such concern. We routinely apply the phrase “miscarriage of justice” in exercising our discretion to grant or deny certiorari review. See Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003) (“A district court should exercise its discretion to grant cer-tiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.”) (emphasis added; citations omitted). More importantly, we have faith in our colleagues’ experience and wisdom to recognize a miscarriage of justice when they see it.
Much more often than not, three judges of this court review the same record and arguments on a given case and reach the same conclusion. On the rare occasions when we disagree as to a conclusion, our judicial system is structured to resolve that disagreement in an orderly way — the majority’s conclusion prevails. If the majority of judges on a particular panel conclude that the error complained of has resulted in a miscarriage of justice, then we should set aside or reverse the judgment or grant the new trial. If the majority concludes otherwise, then we should affirm.
Second, some may be concerned that our argument to apply the harmless error statute’s plain language in civil cases merely would devolve into the “but for,” “correct result” test by another name. We harbor no such concern here either. Certainly situations exist in which a “miscarriage of justice” can occur even though the result would have been the same without the error.
Perhaps the most obvious situation is when a trial court’s error violates a party’s constitutional rights in a criminal case. In such situations, we are not required to set aside or reverse a judgment or grant a new trial. See Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (“We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.”).
However, we have set aside or reversed judgments or granted new trials because of a constitutional error, even though the result would have been the same without the error. Compare, e.g., Arnold v. State, 807 So.2d 136, 141 — 42 (Fla. 4th DCA 2002) (trial court’s error in admitting DNA evidence at trial without giving the defendant an opportunity to present conflicting evidence constituted a violation of his due process rights, was not harmless, and required the reversal of the defendant’s conviction) with Arnold v. State, 53 So.3d 1042 (Table) (Fla. 4th DCA 2011) (indicating the same defendant’s ultimate conviction after the reversal).
We recognize that applying the harmless error statute’s plain language in civil cases may not be a perfect solution. See Chapman, 386 U.S. at 22-23, 87 S.Ct. 824 *775 (“What harmless-error rules all aim at is a rule that will save the good in harmless-error practices while avoiding the bad, so far as possible”) (emphasis added). But if application of the harmless error statute’s plain language is flawed, it is no more flawed than the current two harmless error tests, the latter of which we are compelled to apply to civil cases beginning today.
We say this for two reasons. First, no language exists on the face of the harmless error statute suggesting that the legislature intended for courts to determine whether a miscarriage of justice has occurred based on the error’s effect on the trier of fact, be it in the result or the process. Second, the current harmless error tests require appellate judges to speculate on what effect the error may have had on the trier of fact, be it in the result or the process. While our collective experience may allow us to better predict what effect the error may have had on the trier of fact, that prediction is still no more than speculation.
If we were to apply the harmless error statute’s plain language to this case, it would not appear that the error complained of resulted in a miscarriage of justice. The plaintiff was able to present evidence of the statistical anomaly and was able to argue its weight to the jury. The omitted testimony added little to the plaintiffs case, and the failure of Dr. Dildy to address the statistical anomaly may have been more damaging than what he would have said if the trial court had allowed the cross examination. Therefore, applying either the harmless error statute’s plain language or the majority opinion’s “more likely than not” harmless error test, our decision to affirm would be the same.
MAY, C.J., concurs.