911 So.2d 1190 (2005)
Michael Duane ZACK, Appellant,
v.
STATE of Florida, Appellee.
No. SC03-1374.
Supreme Court of Florida.
July 7, 2005.
Rehearing Denied September 16, 2005.
*1195 Linda McDermott of McClain and McDermott, P.A., Wilton Manors, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Michael Duane Zack, a prisoner under sentence of death, appeals an order of the trial court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons discussed below, we affirm the trial court's order denying postconviction relief, and we deny relief on Zack's petition for writ of habeas corpus.

FACTS
The underlying facts in this case are fully set forth in this Court's decision on direct appeal. See Zack v. State, 753 So.2d 9 (Fla.2000). Zack murdered Ravonne Smith after a nine-day crime spree which began on June 4, 1996. During his crime spree, Zack also murdered Laura Rosillo. Additionally, he stole a vehicle, a rifle, a handgun, and money from other victims. Zack killed Smith on June 13 after meeting her in a bar. They smoked marijuana *1196 and went back to Smith's house. Immediately upon entering the house, Zack hit Smith with a beer bottle, pursued her down the hall to the master bedroom, and then sexually assaulted her. Zack also pursued Smith throughout the house, beat her head against the bedroom's wooden floor, and stabbed her in the chest four times with an oyster knife. Afterwards, Zack cleaned the knife, put it away, and washed the blood from his hands. He put Smith's bloody shirt and shorts in her dresser drawer. He took a television, a VCR, and Smith's purse, and then left in Smith's boyfriend's car. He attempted to pawn the television and VCR which led to his apprehension several days later. Zack confessed to Smith's murder. He claimed that he and Smith had consensual sexual contact and that he attacked Smith only after she made a comment about his mother being murdered.
At trial, defense counsel argued that Zack suffers from fetal alcohol syndrome (FAS) and posttraumatic stress disorder (PTSD), and because of this, Zack was impulsive, under constant mental and emotional distress, and could not form the requisite intent to commit premeditated murder. Zack testified in his defense, explaining what happened when he returned to Smith's home with her on the night of the murder, that any sexual contact was consensual, and that he reacted as a result of comments she made about his mother. The State was allowed to present evidence of collateral crimes, also called Williams[1] Rule evidence, and presented the evidence of the Rosillo murder. The State presented expert testimony regarding DNA evidence in order to identify blood found on both Smith and Rosillo's clothes, as well as Zack's clothing.
The jury convicted Zack of first-degree murder, sexual battery, and robbery, and recommended a sentence of death by a vote of eleven to one. The trial court sentenced Zack to death. This Court affirmed Zack's conviction and sentence on direct appeal. See Zack v. State, 753 So.2d 9, 20, 25 (Fla.2000).
Zack's registry counsel raised six issues in a motion for postconviction relief: (1) whether counsel was ineffective for failing to object to the DNA evidence and failing to request a Frye[2] hearing; (2) whether the trial court erred in failing to sua sponte hold a Frye hearing; (3) whether trial counsel was ineffective for calling Zack to testify without preparing him for cross-examination or explaining to him that he had a choice to testify or not; (4) whether the death penalty is disproportionate due to the possibility that Zack suffers from a possible brain dysfunction and mental impairment, both of which are in the same category as mental retardation, thereby prohibiting execution under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); (5) whether trial counsel was ineffective in closing arguments to the jury; and (6) whether the sentence is unconstitutional pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). The trial court summarily denied issues two, four, and six, but held an evidentiary hearing on issues one, three, and five.
At the evidentiary hearing, both Zack and his trial attorney, Elton Killam, testified. The trial court denied all postconviction relief. Zack appealed the trial court's order and filed a petition for writ of habeas corpus.

*1197 LAW AND ANALYSIS

Postconviction Relief
Zack raises six issues for review of the trial court's order denying postconviction relief. He argues that trial counsel was ineffective for failing to challenge the DNA testimony presented by the State; that counsel was ineffective because he failed to prepare Zack to testify at trial; that counsel was ineffective because he made prejudicial remarks to the jury in the opening statement and closing argument; that the trial court erred in summarily denying claims raised in his motion for postconviction relief involving Zack's right to a Frye hearing and the constitutionality of the death sentence under Atkins; that Florida's capital sentencing scheme is unconstitutional under Ring; and that collateral counsel was ineffective. We address each claim below, and deny relief.

1. DNA Evidence
Zack's first claim is that trial counsel was ineffective because he failed to challenge certain DNA evidence presented by the State. There were two types of DNA evidence presented by the State: Polymerase Chain Reaction (PCR) DNA evidence and Restriction Fragment Length Polymorphisms (RFLP) DNA evidence. Both types of DNA evidence were introduced to prove identity. Zack argues that the PCR DNA evidence was inadmissible and that his trial counsel should have requested a Frye hearing and challenged the qualifications of the State's expert. He contends that counsel failed to do so because he did not understand the science of DNA evidence.
In a successful ineffective assistance of counsel claim, the proponent must establish two things: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.
The State presented two expert witnesses who testified about DNA evidence, Tim McClure and Karen Barnes, both from Florida Department of Law Enforcement (FDLE). According to these experts, the DNA evidence showed that Zack had Smith's blood on him, and that Zack's sperm was found in Smith's body. In his opening statement, defense counsel told the jury that he was not going to cross-examine the State's expert witnesses about DNA, fingerprints, or blood spatters because he was not going to challenge that evidence. At the close of trial, defense counsel reiterated that Zack did not challenge the DNA evidence. At the postconviction hearing, Zack's trial counsel stated that he did not challenge the evidence because he did not dispute Zack's identity as the person who caused the death of the victim. In fact, Zack confessed that he killed Smith, and he said they had consensual sexual contact. The only issue at trial was the issue of intent.
Zack argues that trial counsel should have requested a Frye hearing on the admissibility of the PCR DNA evidence, which would have resulted in the exclusion of this evidence. Under Florida law, a Frye hearing is utilized in order to determine if an expert scientific opinion is admissible. See Flanagan v. State, 625 So.2d 827, 829 (Fla.1993). Such opinion must be based on techniques that have been generally accepted by the relevant scientific community and found to be reliable. *1198 See Frye, 293 F. at 1014. However, Frye is only utilized where the science at issue is new or novel. Brim v. State, 695 So.2d 268 (Fla.1997).
Zack relies on Murray v. State, 692 So.2d 157 (Fla.1997), to support his contention that PCR DNA testing is new or novel and is subject to Frye testing. The Murray decision was released several months prior to Zack's trial.[3] Zack also asserts that his trial counsel lacked any understanding of DNA evidence and had no idea that it should have been excluded. The trial court, however, agreed with trial counsel's assessment that because Zack admitted to sexual contact with Smith and admitted to causing her death, the DNA evidence did not prove any fact at issue in this case. Based on this conclusion, the trial court concluded that trial counsel's strategy was sound and did not constitute ineffective assistance of counsel.
A trial court's resolution of a Strickland claim is a mixed question of law and fact. See Strickland, 466 U.S. at 698, 104 S.Ct. 2052 ("Ineffectiveness is ... a mixed question of law and fact."); Stephens v. State, 748 So.2d 1028, 1033 (Fla. 1999). Thus, we defer to the trial court's factual findings, but review de novo the trial court's legal conclusions. See Stephens, 748 So.2d at 1033.
The factual findings indicate that trial counsel did not challenge the DNA evidence and that Zack conceded the fact that he had engaged in sexual contact with Smith and was responsible for her death. Thus, the PCR and RFLP DNA evidence was offered to demonstrate facts that Zack did not dispute. Trial counsel told the jury that he would not dispute this evidence because doing so would have served no purpose for the defense at trial. Based on these facts, we agree with the trial court's legal conclusion and find trial counsel's strategy sound. Trial counsel's decision to not challenge the DNA evidence did not constitute deficient performance in this case.
In addition, Zack has not shown that he suffered any prejudice from trial counsel's decision not to challenge the DNA evidence. Zack admitted to engaging in sexual contact with Smith and confessed to causing Smith's death. Thus, the facts supported by either type of DNA evidence were already established. See Zack v. State, 753 So.2d 9, 14 ("After he was arrested, Zack confessed to the Smith murder and to the Pope and Chandler thefts."). The issue at trial was Zack's level of intent. The PCR DNA evidence did not go to Zack's level of intent. Therefore, the evidence did not undermine Zack's defense. Had this evidence been challenged, we are confident that the outcome of the trial would not have been affected. We therefore deny relief on this claim.

2. Preparation to Testify
Zack argues that trial counsel failed to adequately prepare him to testify at trial and failed to inform him about what would occur during cross-examination. Zack contends that had he been adequately prepared and informed of the hazards of cross-examination, he would not have testified. Zack stated that trial counsel gave him no choice but to testify, and that he was only told that he was going to testify after trial began.
*1199 Trial counsel stated that he fully discussed the procedure of the trial with Zack. According to trial counsel's testimony, he discussed Zack's version of the events, and the fact that Zack would have to take the stand and testify if he wanted to get his story into evidence so that it could be argued to the jury. Prior to trial, he fully informed Zack about the necessity that he testify and that Zack completely understood that the State would cross-examine him. He also advised Zack as to the specifics of what to expect while on the witness stand, and that Zack never indicated that he did not want to testify.
As the trial court found, the trial record supported trial counsel's statement that Zack never conveyed a desire not to testify. In fact, Zack admitted at the postconviction hearing that he wanted the jury to hear his version of the events. At the postconviction hearing, Zack also complained that he was cross-examined about the Rosillo murder. However, there was no cross-examination about the Rosillo murder as trial counsel had successfully argued at trial that such questioning should not be permitted.
The trial court made a specific finding on credibility and chose to accept Killam's sworn testimony over Zack's sworn testimony that he was not prepared to testify or to be cross-examined. The trial court is in a superior position "to evaluate and weigh the testimony and evidence based upon its observation of bearing, demeanor, and credibility of the witnesses." Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976); see Guzman v. State, 721 So.2d 1155, 1159 (Fla.1998), cert. denied, 526 U.S. 1102, 119 S.Ct. 1583, 143 L.Ed.2d 677 (1999). However, it is our obligation to independently review the record and ensure that the law is applied uniformly in decisions based on similar facts and to ensure that the defendant's representation is within constitutionally acceptable parameters. See State v. Coney, 845 So.2d 120, 141 (Fla.2003) (Pariente, J., concurring); Stephens v. State, 748 So.2d 1028, 1035 (Fla.1999) ("Based on the trial court's findings of fact and our review of the record, we agree with the trial court's conclusions as to both Strickland prongs and the ultimate finding of ineffective assistance of counsel."). Although Zack cites several cases in support of his claim, none involves a defendant who claims he or she was inadequately prepared to testify. See, e.g., Kimmelman v. Morrison, 477 U.S. 365, 384-88, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (addressing the failure of defense counsel to request discovery); Henderson v. Sargent, 926 F.2d 706 (8th Cir.1991) (addressing the failure to conduct pretrial investigation), modified on other grounds, 939 F.2d 586 (8th Cir.1991); Chambers v. Armontrout, 907 F.2d 825 (8th Cir.1990) (en banc) (addressing the failure to interview potential self-defense witnesses); Nixon v. Newsome, 888 F.2d 112 (11th Cir.1989) (addressing counsel's failure to obtain a transcript of a witness's testimony at a codefendant's trial); Code v. Montgomery, 799 F.2d 1481, 1483 (11th Cir. 1986) (addressing the failure to interview potential alibi witnesses).
Furthermore, Zack's own trial testimony does not support this claim. Zack gave his version of the events during direct examination, and although he was argumentative during cross-examination, he did not deviate from his version of the events. He told the jury that he was responsible for Smith's death, but that he did not plan it. He argued with the prosecutor when the prosecutor implied something other than what Zack had already stated. Zack did not always answer "yes" and "no." His answers indicated a desire to explain himself.
*1200 We accept the trial court's finding of facts that defense counsel was a more credible witness and that Zack was adequately prepared to testify at trial. We also find that Zack failed to establish that trial counsel was deficient in preparing him to testify at trial. Additionally, even if counsel had inadequately prepared Zack to be cross-examined, Zack suffered no prejudice. Zack complained about being inadequately prepared for cross-examination about the Rosillo murder, but the record indicates that the prosecutor did not cross-examine him about the Rosillo murder. We defer to the factual findings made by the trial court and, based on these facts, conclude that Zack has failed to establish that he is entitled to relief on his claim of ineffective assistance of counsel in preparing him to testify at trial.

3. Nixon/Cronic Claim
Zack argues that trial counsel was ineffective for conceding guilt at trial without his permission, which violates the mandates of Nixon v. Singletary, 758 So.2d 618 (Fla.2000), and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). He also argues that appellate counsel was ineffective for failing to raise a Nixon/Cronic claim on appeal. The issue of ineffective assistance of appellate counsel is not properly raised in a 3.851 motion; rather, it is appropriately raised in a petition for writ of habeas corpus. See Parker v. State, 904 So.2d 370, 381 (Fla.2005) ("The proper method by which to raise a claim of ineffective assistance of appellate counsel is by petition for writ of habeas corpus directed to the appellate court which considered the direct appeal.") (quoting Ragan v. Dugger, 544 So.2d 1052, 1054 (Fla. 1st DCA 1989)).
We find no merit in Zack's claim that trial counsel was ineffective. Zack relies on this Court's decision in Nixon v. Singletary, which held that Cronic rather than Strickland is the standard for assessing ineffectiveness of counsel when a defendant's attorney concedes guilt to the crime charged without the defendant's express consent. Under Cronic, counsel's deficiency is presumed. See Nixon v. Singletary, 758 So.2d at 622. However, the United States Supreme Court recently overruled the standard applied in Nixon and stated that a defendant's ineffective assistance of counsel challenge based upon counsel's concession of guilt to the crime charged, even without the defendant's consent, must be evaluated under the standard set forth in Strickland. See Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). Thus, in a case such as this, the defendant must show that counsel's strategy to concede guilt was unreasonable. See id.
Because Zack confessed to the killing, trial counsel's strategy was to dispute the intent element of first-degree murder. Trial counsel made a strategic decision to discuss the evidence that was admitted at trial in an attempt to alleviate the damage it would cause if he ignored the evidence. His goal was to get Zack a life sentence, which was a reasonable trial strategy. In closing argument at trial, counsel agreed with the State's argument concerning the messiness and evident brutality of the crime scene. At the postconviction hearing, trial counsel stated that the word "brutality" was not equal to "premeditation," and he wanted to show that the murders were the result of an unintended rage. Trial counsel stated that he knew the crime scene photos would be shown, and those photos made the crime scene "look real bad" and they would not have made sense unless they were shown to have been created by a person who was not in control of his own impulses. Trial *1201 counsel stated that he wanted to maintain his credibility with the jurors.
The trial court found that, taking all of counsel's remarks in the context of the entire trial, counsel's intent was to dilute the damaging testimony that the jury would hear. We agree with the trial court's findings, and conclude that there was no deficient performance. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." See Strickland, 466 U.S. at 700, 104 S.Ct. 2052. Thus, relief on this claim is denied.

4. Failure to Order Frye Hearing and Atkins Claim
Zack next makes two claims. He first argues that the trial court should have sua sponte ordered a Frye hearing on the issue of DNA evidence. On this claim, we find that the trial court properly summarily denied relief. Zack also argues that he is effectively mentally retarded and cannot be executed under Atkins. We also find relief was properly denied on this issue.

A. Frye Hearing.
Zack argues that although defense counsel failed to request a Frye hearing on the issue of whether PCR DNA was generally accepted in the scientific community, the trial court should have conducted a hearing sua sponte. Because counsel did not request a Frye hearing, this is simply a rewording of Issue 1 above. Zack argues that pursuant to Arnold v. State, 807 So.2d 136 (Fla. 4th DCA 2002), the failure to order a Frye hearing on new or novel scientific evidence is fundamental error. Actually, Arnold states that the trial court needs to give all the parties an opportunity to be heard at a Frye hearing, and that the opposing party should be permitted to offer evidence in rebuttal. Arnold does not address a trial court's duty to sua sponte order a Frye hearing.
We have considered and rejected Zack's claim that a Frye hearing was necessary. We will not reverse this conviction based on the trial court's failure to order its own Frye hearing when we have determined that the admission of the disputed evidence was not prejudicial.

B. Atkins Claim
The evidence in this case shows Zack's lowest IQ score to be 79. Pursuant to Atkins v. Virginia, 536 U.S. 304, 317, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), a mentally retarded person cannot be executed, and it is up to the states to determine who is "mentally retarded." Under Florida law, one of the criteria to determine if a person is mentally retarded is that he or she has an IQ of 70 or below. See § 916.106(12), Fla. Stat. (2003) (defining retardation as a significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age eighteen, and explaining that "[s]ignificantly subaverage general intellectual functioning" means performance which is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the department); Cherry v. State, 781 So.2d 1040, 1041 (Fla.2000) (accepting expert testimony that in order to be found retarded, an individual must score 70 or below on standardized intelligence test).
Zack does not dispute the facts in the record. Zack argued at the Huff[4] hearing that although this Court did a proportionality analysis on direct appeal, it is unclear whether it considered all the factors that *1202 render Zack effectively mentally retarded. As stated in our opinion on direct appeal, this Court reviewed the evidence of Zack's brain damage and his mental age in considering mitigation. Postconviction counsel admitted there was no new evidence to support the argument that Zack is mentally retarded. Additionally, at the postconviction hearing, the State pointed out that Zack's mental health was explored at trial and nothing in the evidence offered at trial establishes that he is mentally retarded under the Florida statute. The prosecutor stated that if there was any new or different evidence than that presented at trial, it should be explored in the evidentiary hearing. Zack's postconviction counsel offered no new or different evidence.
In order to prevail on a postconviction claim of ineffective assistance of counsel, Zack must establish that counsel was deficient in some regard. Gaskin v. State, 737 So.2d 509, 516 (Fla.1999). Zack has not done that. In this claim, Zack alleges that he is mentally retarded, which is a bar to the imposition of the death penalty. Such a claim falls under Florida Rule of Criminal Procedure 3.203 and should be addressed pursuant to the procedures set forth in that rule. Therefore, the trial court properly summarily denied relief on this claim, and we affirm the trial court's denial.

5. Ring claim
Zack argues that Florida's capital sentencing statute and his death sentence violate his constitutional rights under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In Bottoson v. Moore, 833 So.2d 693 (Fla.2002), and King v. Moore, 831 So.2d 143 (Fla.2002), this Court denied relief under Ring. Subsequently, this Court has rejected postconviction challenges to section 921.141 that rely on Ring. See, e.g., Gamble v. State, 877 So.2d 706, 719 (Fla.2004) (rejecting appellant's similar claim that Florida's death penalty scheme is unconstitutional under Ring); Rivera v. State, 859 So.2d 495, 508 (Fla.2003); Wright v. State, 857 So.2d 861, 877-78 (Fla.2003); Jones v. State, 855 So.2d 611, 619 (Fla.2003); Chandler v. State, 848 So.2d 1031, 1034 n. 4 (Fla.2003); Banks v. State, 842 So.2d 788, 793 (Fla.2003).
This Court has also rejected claims that Ring requires aggravating circumstances be individually found by a unanimous jury verdict. See Hodges v. State, 885 So.2d 338, 359 n. 9 (Fla.2004); Blackwelder v. State, 851 So.2d 650, 654 (Fla.2003); Porter v. Crosby, 840 So.2d 981, 986 (Fla.2003).
Additionally, the jury found Zack guilty of first-degree murder, sexual assault, and robbery. See Zack v. State, 753 So.2d 9, 12 (Fla.2000). On appeal, this Court found ample evidence to support both of the felony convictions and to support the first-degree murder conviction based on the commission of these felonies and on premeditation. Id. at 17-19. This Court also found the aggravating factor that the murder was committed in conjunction with a robbery and sexual battery to be valid. Id. at 25. We have explained that a defendant is not entitled to relief under Ring where the aggravating circumstance that the murder was committed during the course of a felony was found and the jury unanimously found the defendant guilty of that contemporaneous felony. See, e.g., Gamble v. State, 877 So.2d at 719 (finding death sentence was not invalid under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring where jury found defendant guilty of first-degree murder and the felony of armed robbery); Grim v. State, 841 So.2d 455, 465 (Fla.2003) (explaining that defendant was not entitled to relief under Ring where aggravating circumstances *1203 of multiple convictions for prior violent felonies and contemporaneous felony of sexual battery were unanimously found by jury); Kormondy v. State, 845 So.2d 41, 54 n. 3 (Fla.2003) (explaining that defendant was also convicted by jury of violent felonies of robbery and sexual battery, that murder was committed during course of burglary, and that death sentence could be imposed based on these convictions by the same jury); see also Lugo v. State, 845 So.2d 74, 119 n. 79 (Fla.2003) (attributing denial of relief on Apprendi/Ring claim to rejection of claims in other postconviction appeals, unanimous guilty verdicts on other felonies, and "existence of prior violent felonies"); Doorbal v. State, 837 So.2d 940, 963 (Fla.2003) (stating that prior violent felony aggravator based on contemporaneous crimes charged by indictment and on which defendant was found guilty by unanimous jury "clearly satisfies the mandates of the United States and Florida Constitutions").
In regard to Zack's claim of retroactivity, a majority of this Court has now concluded that Ring does not apply retroactively in Florida under the test of Witt v. State, 387 So.2d 922 (Fla.1980), to cases that are final. See Johnson v. State, 30 Fla. L. Weekly S297 (Fla. Apr. 28, 2005). We therefore deny relief on this claim.

6. Ineffective Assistance of Postconviction Counsel
Zack also argues that his postconviction counsel was ineffective. Under Florida and federal law, a defendant has no constitutional right to effective collateral counsel. This Court has stated that "claims of ineffective assistance of postconviction counsel do not present a valid basis for relief." Lambrix v. State, 698 So.2d 247, 248 (Fla.1996); see also King v. State, 808 So.2d 1237, 1245 (Fla.2002) (upholding the trial court's denial of relief on the ineffective assistance of postconviction counsel claim because it did not state a valid basis for relief). In Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), the Supreme Court refused to extend a due process requirement for effective collateral counsel to situations where a state, like Florida, has opted to afford collateral counsel to indigent inmates. Thus, Zack has failed to state a valid basis for relief, and we therefore deny relief on his claim that postconviction counsel rendered ineffective assistance.

Conclusion
For these reasons, we affirm the trial court's denial of postconviction relief.

PETITION FOR WRIT OF HABEAS CORPUS
Zack raises six claims in his petition for writ of habeas corpus. He argues that appellate counsel was ineffective for failing to raise a claim regarding the State's racially motivated peremptory challenge during jury selection, that appellate counsel should have argued that the prosecutor made impermissible argument to the jury, that the State introduced nonstatutory aggravating factors, that appellate counsel was ineffective for failing to raise a claim on appeal regarding prejudicial and gruesome crime scene photos that were admitted into evidence, that the trial court erred in admitting evidence of other crimes, and that appellate counsel was ineffective in failing to raise on appeal the claim that the trial court erroneously admitted irrelevant and prejudicial evidence. For the following reasons, relief on these claims is denied.

1. Peremptory Challenges
Zack argues ineffective assistance of appellate counsel based on appellate *1204 counsel's failure to raise the issue of two alleged racially motivated peremptory challenges. Claims of ineffective assistance of appellate counsel are properly raised in a habeas petition. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla. 2000). The criteria for proving ineffective assistance of appellate counsel parallels the Strickland standard for ineffective assistance of trial counsel. See Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla. 1985). Thus, the Court must consider
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999) (quoting Suarez v. Dugger, 527 So.2d 190, 192-93 (Fla.1988)). "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford v. Moore, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla. 1994)). Likewise, appellate counsel is not "necessarily ineffective for failing to raise a claim that might have had some possibility of success; effective appellate counsel need not raise every conceivable nonfrivolous issue." Valle v. Moore, 837 So.2d 905, 908 (Fla.2002).
In this claim, both parties rely on Melbourne v. State, 679 So.2d 759 (Fla. 1996), to explain the proper procedure for preserving a claim that a peremptory challenge is racially motivated. In Melbourne, this Court explained that a party objecting to the other side's use of a peremptory challenge on racial grounds must: (1) make a timely objection on that basis; (2) show that the venireperson is a member of a distinct racial group; and (3) request that the court ask the striking party its reason for the strike. The burden then shifts to the proponent of the strike to present a race-neutral explanation. If the explanation is facially race-neutral and the court believes that the explanation is not a pretext, the strike will be sustained. But even if the procedure is followed precisely, the issue is not preserved for appellate review if the party objecting to the challenge fails to renew the objection before the jury is sworn. See Franqui v. State, 699 So.2d 1332, 1334 (Fla.1997); Joiner v. State, 618 So.2d 174 (Fla.1993). By not renewing the objection prior to the jury being sworn, it is presumed that the objecting party abandoned any prior objection he or she may have had and was satisfied with the selected jury. See Joiner, 618 So.2d at 176 ("[C]ounsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection. It is reasonable to conclude that events occurring subsequent to his objection caused him to be satisfied with the jury about to be sworn.").
Defense counsel objected at the time the State exercised its peremptory challenge, but when the jury was sworn, he made no objection to the final jury. The issue is therefore deemed abandoned. Appellate counsel has no obligation to raise an issue that was not preserved for review and is not ineffective for failing to raise an unpreserved issue on appeal. See Randolph v. State, 853 So.2d 1051, 1068 (Fla.2003). Because this issue was not preserved for review and appellate counsel does not have an obligation to raise this issue on appeal, appellate counsel cannot *1205 be deemed ineffective. We therefore deny relief on this claim.

2. Prosecutorial Misconduct
Zack next alleges that appellate counsel was ineffective in failing to raise on appeal several issues involving prosecutor misconduct. He alleges that the prosecutor referred to Zack as a liar, erroneously told the jurors they were acting on behalf of the community, and made inappropriate "golden rule" arguments.

A. "Liar"
It is "unquestionably improper" for a prosecutor to state that the defendant has lied. Washington v. State, 687 So.2d 279, 280 (Fla. 2d DCA 1997) (quoting O'Callaghan v. State, 429 So.2d 691, 696 (Fla.1983)). This is especially true in an instance where the defendant takes the stand in his own defense because the prosecutor's reference to the defendant as a liar encroaches on the jury's job by improperly weighing in with his or her own opinion of the credibility of the witnesses. See, e.g., Gomez v. State, 751 So.2d 630, 632 (Fla. 3d DCA 1999). However, courts have held that where such commentary is supported by the evidence, there will be no reversal. See, e.g., Lugo v. State, 845 So.2d 74, 107-08 (Fla.2003) (holding that where the evidence substantially proved the defendant's deceitful actions, the prosecutor's remarks calling into question the defendant's veracity were nothing more than appropriate comments on the evidence). In Craig v. State, 510 So.2d 857, 865 (Fla.1987), this Court stated that when the prosecutor called the defendant a "liar" it was "somewhat intemperate." However, this Court also stated that when it can be understood that the name "liar" is made in reference to that person's testimony, then the prosecutor is merely submitting to the jury a conclusion he has drawn from the evidence. Id. It is only when, viewed in the totality of the case, the prosecutor's comments drift far afield from the evidence adduced at trial that they may constitute fundamental error. Lugo, 845 So.2d at 101.
This issue was preserved for review, and appellate counsel did not raise it on appeal. In all probability, however, had this issue been raised, it would have been deemed meritless. Thus, appellate counsel's failure to raise this meritless issue cannot be deemed ineffective assistance. See Valle v. Moore, 837 So.2d at 908; Rutherford, 774 So.2d at 643.
The prosecutor's comments refer to Zack's testimony and the evidence at trial. Zack testified on direct examination that he had lied in the past. He was asked if he had problems stealing and lying and if he had lied to the jury about what happened with Smith. Zack said, "No, I did not lie, and I did not lie to [the police]." Defense counsel was dealing with this negative evidence up front so the prosecutor could not introduce it first. On cross-examination, the prosecutor asked Zack if he was a convicted felon, admitted thief, and an admitted liar. Zack responded that he was. Zack again disputed the accusation that he was lying in this trial.
In closing arguments for the guilt-phase trial, the prosecutor told the jurors to look at the evidence, that Zack testified, and that his testimony was to be considered the same as any other witness. The prosecutor asked if Zack was straightforward and honest in answering the questions, whether he had self-interest, and whether his testimony was consistent with the other evidence at trial. The prosecutor asked the jury to consider whether Zack had previously been convicted of a crime, and told them that Zack admitted to having committed five crimes. He asked the jurors to assess the testimony of the other *1206 witnesses by the same considerations, i.e., to consider whether they were straightforward and whether their testimony was consistent with the other evidence. The prosecutor then pointed to an inconsistency in the evidence and said that Zack did not tell the truth at one point. He talked about lies in general, saying there is usually an element of truth in a lie. He told the jurors to use their common sense and go through the evidence and pick out the truth. Defense counsel moved for a mistrial saying that this was the second time the prosecutor made reference to the defendant as a liar. The court denied the motion for mistrial, but told the prosecutor not to use the word "liar."
When considered in context, the prosecutor did not call Zack a liar; rather, he examined the totality of Zack's testimony as well as the other evidence presented and drew a conclusion that he was lying. The failure to raise this claim on direct appeal does not amount to deficient performance on the part of appellate counsel because the commentary was supported by the evidence and because the claim would have been unsuccessful on appeal. See Rutherford v. Moore, 774 So.2d at 643 (the failure of appellate counsel to raise what in all probability would be a meritless issue will not render appellate counsel's performance ineffective). We therefore deny relief on this claim.

B. "Send a Message" Argument
Zack next argues that the prosecutor's admonition to the jury to act on behalf of the community amounts to an inappropriate send-a-message argument. An example of a classic send-a-message argument is the prosecutor telling the jury to send a message to other drug dealers, and deter drug dealers from bringing drugs into our communities and into our homes. See, e.g., United States v. Sanchez-Sotelo, 8 F.3d 202, 211 (5th Cir.1993). The defendant in Sanchez-Sotelo argued that the admission of this evidence was reversible for three reasons: first, it influenced the jury to convict the defendant based on broad policies against drugs and not based on the evidence of the case; second, the court gave no cautionary instruction to curtail the effect of the argument; and third, the evidence of guilt was "extremely thin." Id. at 211. The Fifth Circuit disagreed and held that the trial court did not abuse its discretion or commit plain error because: first, a prosecutor may appeal to the jury to act as the conscience of the community; second, the district court sufficiently instructed the jury to disregard the comments regarding women, children, and parents; and third, there was ample evidence produced at trial, so that the send-a-message comments did not cast serious doubt on the propriety of the jury's verdict. Id. In this case, the prosecutor did not tell the jury to send a message to other defendants. Rather, he told the jury to act on behalf of the community. Furthermore, in light of the ample evidence produced at trial, we conclude that there is no reasonable possibility that the objected-to comments contributed to the jury's verdict. Appellate counsel did not perform deficiently by failing to raise this claim.
To the extent that the prosecutor's comment can be considered a "conscience of the community" argument, relief is also denied. In Smith v. State, 818 So.2d 707, 710-11 (Fla. 5th DCA 2002), the district court considered the same type of argument. The prosecutor told the jury: "[Y]ou are citizens that speak on behalf of your community.... You are citizens that speak on behalf of your community in rendering a verdict in this case." Id. While the district court found that the prosecutor approached the line of propriety and may have gone beyond, it concluded that the *1207 trial court's refusal to grant a mistrial based on these comments was not an abuse of discretion. Id. The district court concluded that the reference to the jury speaking for the community did not permeate the closing argument, that it was near the end of the argument, and it was not repeated after the defense objected. Thus, the court concluded, this isolated and limited comment would not appear to be so prejudicial as to vitiate the entire trial and thus a mistrial was not warranted. See also Card v. State, 803 So.2d 613 (Fla.2001) (finding prosecutor's conscience of the community argument in penalty phase was not so prejudicial as to vitiate the entire trial and thus court did not abuse its discretion in denying request for mistrial; prosecutor's reference to the term was isolated and he did not continue with the argument after the defense objected); Otero v. State, 754 So.2d 765 (Fla. 3d DCA 2000) (concluding that impermissible conscience of the community argument did not warrant a reversal; argument was made at the very end of the State's rebuttal argument and did not otherwise permeate the State's closing argument).
Appellate counsel is not ineffective for failing to raise an issue that is meritless.

C. Sympathy in the Jury Room.
Zack argues appellate counsel was ineffective for failing to claim reversible error on appeal because the prosecutor told the jury not to allow sympathy in the jury room and to decide the case only on the evidence. This Court addressed the prosecutor's comments in its opinion on direct appeal. See Zack, 753 So.2d at 24. In addressing whether the trial court erred in refusing to instruct the jury on the role of sympathy in the deliberative process, this Court refused Zack's invitation to recede from the case law which was unfavorable to his argument. Id. at 23. "[C]laims raised in a habeas petition which petitioner has raised in prior proceedings and which have been previously decided on the merits in those proceedings are procedurally barred in the habeas petition." Porter v. Crosby, 840 So.2d 981, 984 (Fla. 2003). Thus, Zack is not entitled to relief on this claim.

D. Golden Rule.
Zack argues that appellate counsel was ineffective for failing to argue on appeal that the prosecutor made an improper "golden rule" argument. A "golden rule" argument asks the jurors to place themselves in the victim's position, to imagine the victim's pain and terror, or to imagine how they would feel if the victim were a relative. See Pagan v. State, 830 So.2d 792, 812-13 (Fla.2002). Zack argues that the prosecutor told the jurors to imagine themselves as the victim. In penalty phase closing argument, the prosecutor systematically went through the aggravators. When he got to heinous, atrocious, or cruel, the prosecutor told the jurors that the court would instruct them on what heinous means, what atrocious means, and what cruel means. However, the prosecutor went on to define each term, and then argued that the specific evidence met those definitions. The prosecutor argued:
Did the defendant's acts during the course of this murder show any conscience or compassion for a human being? Does his acts show any pity for the victim? Can any one of us imagine, except to look at the evidence, the terror that was coursing through the victim during her last few minutes of life? Beaten down in her own home by a person that she extended trust to, clothes ripped off of her, thrown bleeding into her bed, raped in her bed, chased into another part of the house, caught, thrown to the floor, head slammed to the floor. Look at this, *1208 ladies and gentlemen, and ask yourselves whether or not this is torture in the classic sense.
Trial counsel made no objection to this argument. If the prosecutor's comments were error, it was not preserved for review and thus not cognizable on appeal. See Chandler v. State, 702 So.2d 186, 191 (Fla. 1997); Kilgore v. State, 688 So.2d 895, 898 (Fla.1996). Counsel is not ineffective for failing to raise an issue that has not been preserved for appellate review.
The only exception to this procedural bar is where the prosecutor's comments constitute fundamental error. See Urbin v. State, 714 So.2d 411, 418 n. 8 (Fla.1998); Bonifay v. State, 680 So.2d 413, 418 n. 9 (Fla.1996). Fundamental error is defined as the type of error which "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Urbin, 714 So.2d at 418 n. 8 (quoting Kilgore, 688 So.2d at 898).
The alleged "golden rule" comment was just one line made during the prosecutor's discussion of the heinous, atrocious, or cruel aggravator. That comment, while using the term "imagine," does not rise to the level of fundamental error or "reach down into the validity of the trial itself." See, e.g., Davis v. State, 604 So.2d 794, 797 (Fla.1992) (holding that comment by prosecutor during penalty phase closing argument that "it might not be a bad idea to look at [the knife] and think about what it would feel like if it went two inches into your neck" was improper, but it was not so egregious as to undermine jury's recommendation). We therefore deny relief on this claim.

3. Nonstatutory Aggravation
The defense's theory at trial was that Zack has low impulse control and would lose control if someone pushed his "hot button." Zack presented expert evidence on this theory. In rebuttal, the State presented Dr. Harry McClaren, who testified that Zack exhibited hatred toward women, not just low impulse control. Trial counsel objected to this testimony, and Zack now argues this amounted to the presentation of a nonstatutory aggravator. Zack further argues that the admission of evidence relating to a nonstatutory aggravator is a constitutional error in light of the fact that the United States Supreme Court has upheld Florida's statutory scheme, and the statutory scheme does not permit the introduction of nonstatutory aggravators. Zack contends that appellate counsel was ineffective for failing to raise this claim on appeal.
The only matters that may be considered in aggravation are those set out in the death penalty statute. See Winkles v. State, 894 So.2d 842, 846 (Fla.2005) (citing Vining v. State, 637 So.2d 921, 927 (Fla.1994)). Thus, initially the Court must determine if the trial court erred in admitting Dr. McClaren's testimony about Zack's hatred of women. While relevant evidence should not be excluded merely because it points to the commission of a separate crime, it must be relevant to a material issue other than propensity or bad character. See, e.g., Williams v. State, 143 So.2d 484 (Fla.1962). Viewed in context, this testimony was offered in rebuttal to the defense, not as a nonstatutory aggravator.
Zack's reliance on Perry v. State, 801 So.2d 78 (Fla.2001), is misplaced, as that case is distinguishable. In Perry, as the first witness of the State's penalty phase case, the State presented the testimony of the defendant's ex-wife about numerous instances of domestic violence. Id. at 90. While the State alleged that defense counsel *1209 "opened the door" to this testimony during the guilt phase of the trial by claiming that the defendant was nonviolent, the record did not support this claim. Id. Thus, the ex-wife's testimony regarding the defendant's prior violent acts, all unrelated to the crime at issue and not offered in support of any aggravating circumstance, constituted impermissible nonstatutory aggravation, not "anticipatory rebuttal." Id.
In contrast, here the State only presented Dr. McClaren's testimony in rebuttal to the defense's mitigation witnesses who testified about Zack's low impulse control and the defense's theory that Zack murdered the victim because his "hot button" had been pushed. The record supports the conclusion that this was proper rebuttal testimony, not improper evidence of a non-statutory aggravator.
Even if the admission of this evidence was error, it was harmless. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). The prosecutor did not argue Zack's alleged hatred of women in closing argument. Additionally, the trial court properly instructed the jurors as to the aggravating factors they could consider. Thus, even if Dr. McClaren's testimony was improperly admitted, any error would be harmless beyond a reasonable doubt. See Walker v. State, 707 So.2d 300, 313-14 (Fla.1997) (holding that where prosecutor interjected a nonstatutory aggravating circumstance into the proceedings, the error was harmless because the prosecutor rephrased the improper question and did not argue this point in closing argument and because the instance of misconduct was isolated and the trial court properly instructed the jurors as to the aggravating factors they could consider).
We therefore deny habeas relief on this claim.

4. Gruesome and Prejudicial Photographs
Defense counsel objected to the admission of certain photos of the victim by the prosecutor. The court allowed two of the photos into evidence. Counsel also objected to slides showing scenes from the Rosillo murder, and the trial court allowed three of these slides into evidence. The photos and slides in question were used by the medical examiner when discussing the victims' injuries and used to demonstrate similarities for purposes of Williams Rule evidence. Admission of photographic evidence is within the trial court's discretion, and a trial court's ruling will not be disturbed on appeal unless there is a showing of clear abuse. See Wilson v. State, 436 So.2d 908 (Fla.1983). Zack now argues appellate counsel was ineffective for failing to argue this issue on appeal.
In order to obtain relief on this claim, appellate counsel would have had to show that the trial court erred in admitting the photographs and that the admission of the photos was so prejudicial that the defendant should have a new trial. Given the evidence in this case, including Zack's confession, the photos that were admitted did not contribute to the defendant's conviction. "The test for admissibility of photographic evidence is relevancy rather than necessity." Pope v. State, 679 So.2d 710, 713 (Fla.1996); see also Provenzano v. Dugger, 561 So.2d 541, 549 (Fla. 1990) ("Photographs must only be excluded when they demonstrate something so shocking that the risk of prejudice outweighs [their] relevancy."). There were only a limited number of photos that the medical examiner used during his testimony, and these photos were relevant to the issues addressed by the medical examiner. We conclude that appellate counsel was *1210 not ineffective for failing to raise this non-meritorious issue on appeal.

5. Williams Rule Evidence
Zack next argues that despite proper objection at trial, appellate counsel failed to raise the issue regarding the improper use of the Williams Rule evidence to prove aggravating circumstances at the penalty phase. This claim simply refashions a claim that was unsuccessfully raised on direct appeal. On direct appeal, Zack argued that the trial court erred in admitting evidence of other crimes because these crimes were not sufficiently similar to the crimes charged, did not prove intent or disprove voluntary intoxication, were not inextricably intertwined, and became a feature of the trial. Zack, 753 So.2d at 16. This Court held that the evidence was relevant as part of a prolonged criminal episode demonstrating Zack's motive, intent, modus operandi, and the entire context from which this murder arose. Id. Zack does not challenge the admissibility of the Williams Rule evidence in his habeas claims; rather, he argues that the evidence was used excessively and inappropriately. This claim reasserts the Williams Rule claim raised on direct appeal. It is well recognized that a defendant may not couch a claim decided adversely to him on direct appeal in terms of ineffective assistance of counsel in an attempt to circumvent the rule that postconviction relief proceedings may not serve as a second appeal. See Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995); see also Parker v. Dugger, 550 So.2d 459, 460 (Fla. 1989) ("[H]abeas corpus petitions are not to be used for additional appeals on questions which ... were raised on appeal or in a rule 3.850 motion. . . ."); Rutherford v. Moore, 774 So.2d 637, 645 (Fla.2000) (holding that when a claim is actually raised on direct appeal, the Court will not consider a claim that appellate counsel was ineffective for failing to present additional arguments in support of the claim on appeal). Thus, the Williams Rule claim is procedurally barred in this habeas proceeding.

6. Prejudicial Evidence
Zack next argues that a baseball cap introduced by the State was irrelevant and prejudicial because Zack's identity was not in dispute, there were other items that the State could have used to establish identity, and the State should not have used the hat because the Confederate flag image on the hat portrayed Zack as a racist to the jurors. Defense counsel objected to the introduction of the baseball hat. He objected again when the prosecutor referenced Zack's actions following the murder. Zack now argues that appellate counsel was ineffective for failing to argue this issue on appeal.
A trial court has broad discretion in determining the relevance of evidence, and such a determination will not be disturbed absent an abuse of discretion. See Heath v. State, 648 So.2d 660, 664 (Fla. 1994). The trial court overruled the objection to the hat because it showed what Zack was doing after he took Smith's boy-friend's car, and the hat identified him as the person who walked into the pawn shop with Smith's stolen property. The pawn shop owner testified that the hat looked like the one Zack was wearing. Because Zack has not shown an abuse of the trial court's discretion, he has also failed to demonstrate that appellate counsel was ineffective for not arguing this meritless issue. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000).
Zack also argues he was prejudiced when the trial court did not redact a portion of his statement to police in which he said he had been arrested "a million times" before. Because there was no objection at *1211 trial to this statement, appellate counsel cannot be deemed ineffective for failing to raise an unpreserved issue on appeal. See Randolph v. State, 853 So.2d 1051, 1066 (Fla.2003).
Because appellate counsel was not ineffective for failing to raise what would have been a meritless issue with regard to the hat, and because the issue of whether the trial court should have redacted statements that Zack had previously been arrested was not preserved and not fundamental error, Zack is not entitled to habeas relief on this claim.

CONCLUSION
We affirm the trial court's order denying postconviction relief, and we deny relief on Zack's petition for writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[3] Although PCR DNA testing was still being challenged in September and October 1997, when this case was tried, the PCR method of DNA testing is now generally accepted by the scientific community and is not subjected to Frye testing. See Lemour v. State, 802 So.2d 402, 404-5 (Fla. 3d DCA 2001).
[4] Huff v. State, 622 So.2d 982 (Fla.1993).